**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DK MEDIA GROUP INC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO.: _____** |
| **THE KOREA TIMES MEDIA INC** | § | |
| **and YUNJU KYOUNG,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff DK Media Group Inc ("DK" or "Plaintiff") files this, its Original Complaint against Defendants The Korea Times Media Inc and Yunju Kyoung (collectively, "Defendants") as follows:

### I.      PARTIES & SERVICE

1.      Plaintiff, DK Media Group Inc, is Texas corporation with its principal place of business in Dallas, Dallas County, Texas.

2.      Defendant, The Korea Times Media Inc, is a Texas corporation doing business in Texas which can be served through its registered agent, Yunju Kyoung, at her address registered with the Texas Secretary of State, 11445 Emerald St, STE 112, Dallas, TX 75229, or The Korea Times Media Inc's other possible addresses, 11500 N. Stemmons Fwy, #162, Dallas, TX 75229 or 11445 Emerald St, STE 162, Dallas, TX 75229, or wherever she may be found.

3.      Defendant, Yunju Kyoung, is an individual resident of the State of Texas who can be served with process at her home, 2200 Ellis Dr, Flower Mound, TX 75028, or wherever she may be found.

### II.      JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action

arises under the laws of the United States.

### III.   FACTUAL BACKGROUND

5.      DK Media Group Inc is a Dallas-Fort Worth-based, Korean language media company which has established itself as an industry leader in the DFW Korean community through its high-quality content and expeditious, accurate reporting. DK serves the Korean community through several mediums including radio, magazine, television, and its newspaper, Korea Town News ("KTN"), which DK acquired in April of 2019.

6.      Yunju Kyoung ("Kyoung"), who sometimes writes under the penname "Yunju Choi", is a Korean journalist. From 1999 to 2013, Kyoung was the chief reporter for a DFW Korean language newspaper, News Korea. In or around 2014, News Korea's readership had significantly declined, and Kyoung departed from News Korea and became a publisher at News Net, another Korean language newspaper which is also now defunct. In or around 2018, Kyoung founded The Korea Times Media Inc, which does business as The Korea Times ("TKT").

7.      TKT largely posts online news articles in Korean to its website, koreatimestx.com.

8.      In or around early May of 2019, Kyoung posted to TKT's Facebook page a statement accusing KTN of infringing on TKT and her copyright (the "2019 Post") by reproducing verbatim the words of a speaker quoted in one of Defendants' articles.

9.      Upon information and belief, Kyoung knew that the quotes utilized by KTN did not constitute copyright infringement, and she posted the 2019 Post merely to harass and to defame KTN because she was jealous of its greater degree of success compared to her previous employers and to TKT.

10.      On or about May 31, 2019, KTN sent to Defendants a letter demanding that they delete the defamatory 2019 Post. In recognition of their wrongful actions, Defendants complied with KTN's

demand.

11.     On or about July 11, 2023, Defendants posted to TKT's website an opinion article styled as a "fact check" ("Article #1"). Article #1 contained several copy-pasted portions from one of KTN's articles published on July 7, 2023 ("KTN's Article"). Defendants were not authorized to reproduce KTN's Article, and Defendants did not credit KTN as the author of the copy-pasted portions contained in Article #1. Upon information and belief, Defendants did not credit KTN, despite overtly copying its works, to gain notoriety and to avoid potential liability.

12.     In Article #1, Defendants claimed that KTN intentionally interfered with the 10th Anniversary of the Dallas Korean Consulate Symposium (the "Symposium") by directly calling DFW Korean community leaders and asking them not to attend. Defendants further claimed in Article #1 that KTN groundlessly defamed the organization that hosted the Symposium by misstating its involvement and standing in the DFW Korean community by, among other things, misstating when the organization was founded.

13.     KTN did not intentionally interfere with the Symposium.

14.     KTN did not call any DFW Korean community leaders to ask them not to attend the Symposium. KTN did not ask any DFW Korean community leaders not to attend the Symposium.

15.     KTN did not misstate the Symposium's host organization's history in the DFW Korean community. In fact, Defendants, in Article #1, misidentify the host organization.

16.     Defendants did not contact KTN to verify their statements or seek permission to reproduce its article.

17.     Upon information and belief, Defendants published Article #1 to intentionally harass and defame KTN due to jealousy of its success and in retaliation for KTN's earlier 2019 demand.

18.     Article #1 garnered significant attention in the DFW Korean community. Readers of

Defendants' Article #1 were shocked that KTN would interfere with the Symposium and intentionally cause division in the Korean community. As a result, KTN received communications from its readers and advertisers regarding Defendants' false allegations. KTN was forced to explain to its readers and advertisers that the statements made in Defendants' Article #1 were false.

19.     Due to the impact of Article #1, KTN suffered a loss to its reputation, its readership, and its advertisements and was forced to bear undue costs and expenses to communicate with its readers and advertisers about Defendants' false statements in Article #1.

20.     Defendants, as experienced participants in the newspaper industry, were aware of KTN's advertising relationships. Moreover, Defendants could plainly see who placed ads with KTN when they copy-pasted from KTN's Article.

21.     Because of the attention Defendants received from Article #1, on or about July 12, 2023, Defendants posted to TKT's website another opinion article styled as a "fact check" ("Article #2"). In Article #2, Defendants again attacked KTN's Article as disingenuous, and Defendants again copy-pasted from KTN's Article without attribution or permission.

22.     KTN received inquiries and feedback regarding the veracity of the claims in Article #2. KTN was once again forced to explain to its readers and advertisers that the defamatory statements contained in Article #2 were false.

23.     Due to Defendants' actions, Plaintiff has suffered a loss in reputation, readership, advertisements, and has suffered undue costs and expenses.

## IV.     FIRST CLAIM FOR RELIEF – LIBEL AS TO ALL DEFENDANTS

24.     Defendants published false statements in Article #1 and Article #2 that (1) KTN intentionally interfered with the Symposium; (2) KTN called Korean DFW community leaders and asked them not to attend the Symposium; and (3) KTN defamed and misstated the history of

the Symposium's host organization.

25.     Defendants' statements defamed Plaintiff by causing it financial injury via loss of readership and advertisement revenue. Defendants' statements further defamed Plaintiff by impeaching Plaintiff's honesty, integrity, virtue, and reputation by causing its readers to believe that Plaintiff would disrupt a public event and report on that event, thereby manipulating, creating, and inaccurately reporting the news.

26.     Defendants, in stating that (1) KTN intentionally interfered with the Symposium and (2) KTN called DFW Korean community leaders and asked them not to attend the Symposium, acted with malice. Defendants knew their statements were false in that they were utter fabrications not based upon any actual events or occurrences. Alternatively, Defendants made the foregoing statements with reckless disregard for their falsity.

27.     Defendants, in stating that KTN defamed the Symposium's host organization by misstating its history, were negligent. Defendants knew or should have known that its "fact check" of KTN's statements about the Symposium's host organization was false based upon publicly available information and based upon Defendants' own misidentification of the Symposium's host organization.

28.     Plaintiff was damaged by the foregoing statements in that it has suffered a loss of reputation, readership, advertising, and has been forced to bear the costs and expenses of communicating the falsity of Defendants' statements to its readers and advertisers.

### V.     SECOND CLAIM FOR RELIEF – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AS TO ALL DEFENDANTS

29.     Plaintiff has numerous relationships with its advertisers and prospective advertisers.

30.     Defendants by virtue of their involvement in the newspaper industry and by virtue of their having read KTN's newspaper, know and knew of these relationships.

31.     Defendants by defaming Plaintiff purposefully and wrongfully disrupted these relationships.

32.     As a result, Plaintiff has suffered a loss of advertisements.

## VI.     THIRD CLAIM FOR RELIEF – COPYRIGHT INFRINGEMENT AS TO ALL DEFENDANTS

33.     Pursuant to 17 U.S. Code § 104(b)(1), KTN's Article is a copyrighted work subject to protection.

34.     Defendants infringed on that copyright by the unauthorized reproduction of KTN's Article.

35.     As a result of Defendants' infringement, Plaintiff has been damaged an amount to be proven at trial.

36.     Pursuant to 17 U.S. Code § 504(b), Plaintiff is entitled to recover Defendants' profits.

## VII.     ATTORNEY'S FEES

37.     Plaintiff retained the undersigned and the law firm of Song Whiddon, PLLC for representation in this matter.

38.     Defendants are liable to Plaintiff for reasonable and necessary attorney's fees pursuant to 17 U.S. Code § 505.

## VIII.     PRAYER

WHEREFORE, Plaintiff DK Media Group Inc respectfully prays that The Korea Times Media Inc and Yunju Kyoung be cited to appear and answer herein and that on final trial Plaintiff has judgment against Defendants as follows:

  (i)       Actual damages;
  (ii)      Profits;
  (iii)     Exemplary damages;
  (iv)      Reasonable and necessary attorneys' fees;
  (v)       Pre- and post-judgment interest;
  (vi)      Costs of Court; and
  (vii)     All further relied, at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

**SONG WHIDDON, PLLC**

*/s/ Tailim Song*
TAILIM SONG
State Bar No. 00792845
tsong@songwhiddon.com
VRINDA BHUTA
State Bar No. 24128823
vbhuta@songwhiddon.com
8111 LBJ Freeway, Suite 480
Dallas, Texas 75251
(214) 528-8400 Telephone
(214) 528-8402 Facsimile
**ATTORNEYS FOR PLAINTIFF**